RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

2006 NOV 29  PM 2: 02

NANCY M.
MAYER-WHITTINGTON
CLERK

SALLY BROESSEL,
470 Blue Hole Road
Campbellsville, KY 42718,
On Behalf of Herself And All
Others Similarly Situated,

Plaintiff,

vs.

TRIAD GUARANTY INSURANCE CORP
101 South Stratford Road, Suite 500
Winston Salem, NC 27104

Defendant.

_____/

CASE NO. 1:04CV-4-M
U.S. District Court, Western District
of Kentucky, Bowling Green Division

CLASS REPRESENTATION

CASE NUMBER   1:06MS00531

JUDGE: Henry H. Kennedy

DECK TYPE: Miscellanous

DATE STAMP: 11/29/2006

### PLAINTIFF'S MOTION TO COMPEL MORTGAGE INSURANCE COMPANIES OF AMERICA ("MICA") TO PRODUCE DOCUMENTS AND DEPOSITION TESTIMONY PURSUANT TO PLAINTIFF'S SUBPOENAS

On April 12, 2006, pursuant to Fed. R. Civ. P. 45, Plaintiff served subpoenas for documents

and testimony to Mortgage Insurance Companies of America ("MICA"), a non-party in Washington,

D.C. Copies of the subpoenas are attached hereto as Exhibits "A" and "B," respectively. On May

26, 2006, following an extension granted by Plaintiff in which to respond to the subpoenas, MICA

served its objections to the subpoenas. MICA's objections are attached hereto as Exhibits "C" and

"D." MICA objected to each document request and deposition topic on the grounds that the

information sought was protected by one or more claimed privilege, including the attorney-client

privilege, work product doctrine, joint defense and/or common interest doctrine. To date, MICA has

not produced any documents or information pursuant to Plaintiff's subpoenas. Because MICA's

objections were essentially a mirror image of those asserted by Triad in connection with Plaintiff's

original motion to compel Triad held MICA documents and other documents withheld by Triad under an identical claim of privilege, Plaintiff awaited the Court's ruling on Plaintiff's original motion to compel prior to moving to compel responses and testimony pursuant to the subpoenas. In August 2006, the Court sustained Triad's, and by extension MICA's, claim of a joint defense or common interest privilege to protect requested documents and related testimony. However, Triad's position at that time was that it did not intend to assert the advice of counsel defense to Plaintiff's claims.

On October 19, 2006, Triad's corporate representative – Earl Wall – claimed for the first time in nearly three years of litigation that Triad did intend to rely on his advice as Triad's in-house counsel in opposing Plaintiff's claim that Triad wilfully violated the FCRA. This eleventh hour revelation by Triad was contrary to the position Triad had taken during the nearly three years of prior litigation to successfully deprive Plaintiff of documents and testimony relevant to willfulness under a claim of privilege. Triad and by extension MICA cannot have it both ways.

On November 1, 2006, Plaintiff filed a renewed motion to compel in the U.S. District Court for the Western District of Kentucky, requesting that the Court order Triad to produce documents and information which Triad previously withheld based on claim of privilege, but which claim has now been waived in light of Triad's recent assertion of the advice of counsel defense. For the Court's convenience and MICA's, Plaintiff has attached a copy of its renewed motion to compel hereto as Exhibit "E." If Plaintiff's renewed motion to compel is resolved in her favor, Plaintiff will be entitled to discovery of documents and testimony from Triad and from MICA that relate to Triad's knowledge and state of mind regarding its obligation to provide adverse action notice under the Fair Credit Reporting Act. Thus, Plaintiff respectfully requests that, in accordance with Fed.

2

R. Civ. P. 45(c), this Court should compel MICA to provide responsive documents and deposition testimony pursuant to Plaintiff's subpoenas. Plaintiff has separately moved the Court for an extension of time to complete the deposition of MICA should the Kentucky Court rule in Plaintiff's favor in connection with the Motion to Compel against Triad which is attached hereto as Ex. E.

However, given that the Court in Kentucky cannot compel MICA to provide documents or deposition testimony and MICA has refused to agree to consider itself bound by the Kentucky Court's determination regarding the extent of the waiver (if any) by Triad of the asserted attorney client and joint defense privileges, Plaintiff has no choice but to seek the assistance of this Court. This Motion to Compel which might otherwise be viewed as premature is being brought now – before the Kentucky Court's ruling on the Motion to Compel Triad – in order to avoid any contention that Plaintiff did not seek to compel discovery from MICA prior to the current discovery cut-off in the Kentucky case.

WHEREFORE, Plaintiff requests that this Court compel MICA to provide documents and deposition testimony responsive to the subpoenas served on MICA in accordance with the Kentucky Court's Order on Plaintiff's Renewed Motion to Compel filed against Triad and attached hereto as Ex. E. This Court need not do more than obligate MICA to conform its conduct to the rulings of the Kentucky Court with regard to the extent of the waiver (if any) found by the Kentucky Court to have occurred as a result of Triad's late announcement of an intention to rely on the advice of counsel as a defense in the Kentucky action.

PHILLIPS & COHEN LLP

Peter W. Chatfield (D.C. Bar No. 418576)
2000 Massachusetts Avenue, N.W.
Washington, D.C. 20036

Telephone: (202) 833-4567
Facsimile: (202) 833-1815

JAMES, HOYER, NEWCOMER &
  SMILJANICH, P.A.
Terry A. Smiljanich
Tamra Carsten Givens
4830 W. Kennedy Blvd., Suite 550
Tampa, FL 33609
Telephone:  (813) 286-4100

PARRY DEERING FUTCHER
 & SPARKS, PSC
Dana E. Deering
128 East Second Street
P.O. Box 2618
Covington, KY 41012
Telephone: (859) 291-9000

DOUGLAS BOWDOIN, PA
Douglas Bowdoin
Suite 800, Citrus Center
255 S. Orange Avenue
Orlando, FL 32801
Telephone: (407) 422-0025

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I HEREBY certify that a true copy of the foregoing has been served upon the parties listed

below

**VIA FAX & U.S. MAIL**:
Nolan C. Leake
Jennifer R. Vala
Lisa Wolgast
King & Spalding
1180 Peachtree St. NE
Atlanta, GA 30309-3521

**VIA FAX & U.S. MAIL**:
Ronald G. Sheffer
Sheffer Law Firm, LLC
101 South Fifth Street, Suite 1600
Louisville, KY 40202

Alvin Dunn
Pillsbury Winthrop Shaw Pittman LLP
2300 N. Street, NW
Washington, D.C. 20037-1122

by facsimile and U.S. Mail this **29**th day of November, 2006.

Peter W. Chatfield (D.C. Bar No. 418576)
PHILLIPS & COHEN LLP
2000 Massachusetts Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 833-4567
Facsimile: (202) 833-1815

# EXHIBIT A

AO 88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

# United States District Court

### DISTRICT OF COLUMBIA

SALLY BROESSEL,
     Plaintiff

**SUBPOENA IN A CIVIL CASE**

     V.

TRIAD GUARANTY INS. CORP.
     Defendant.

CASE NUMBER:1  1:04cv-4-M
U.S. District Court, Western District of
Kentucky, Bowling Green Division

To: Mortgage Insurance Companies of America- c/o Suzanne Hutchinson
    727 15th Street, NW, 12th Floor, Washington, DC  20005

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time
   specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking
   of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents
   or objects at the place, date, and time specified below (list documents or objects): See attached Exhibit A

| PLACE 4830 W. Kennedy Blvd., Suite 550 Tampa, FL  33609 | DATE AND TIME April 21, 2006 @9:00 AM |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified
   below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

     Any organization not a party to this suit is subpoenaed for the taking of a deposition shall designate
one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and
may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil
Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) *Kall Clk Knight* | DATE  4/12/06 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER Kathleen Clark Knight · (813) 286-4100
James Hoyer Newcomer & Smiljanich, PA, 4830 W. Kennedy Blvd., Ste. 550, Tampa, FL
                              33609

     (See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

1 If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

Date

Signature of Server

Address of Server

RULE 45, Federal Rules of Civil Procedure, Part C & D:
(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney In breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)    (A) A person commanded to produce and permit Inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition. hearing or trial.

(B)    Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may. within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. if objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. if objection has been made, the party Serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who Is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)    (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that

person resides, Is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may In order to attend trial be commanded to travel from any such place within the state in which the trial Is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies. or
(vi) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial Information, or
(ii) requires disclosure of an un-retained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena. quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that Cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories In the demand.

(2)    when information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

### EXHIBIT "A"

1.     Any and all documents regardingYour relationship with Triad Guaranty Insurance Corp. ("Triad")

2.     Any and all documents in your possession, custody or control regarding advice or information You have provided to Triad regarding a mortgage insurer's obligations to provide adverse action notice to consumers pursuant to the Fair Credit Reporting Act since January 1, 1997.

3.     Any and all documents in your possession, custody or control regarding seminars, meetings, clinics or conventions you have sponsored, attended or organized, and to which Triad or its counsel were invited and/or attended, at which adverse action under the Fair Credit Reporting Act was discussed since January 1, 1997.

4.     Any and all documents in your possession, custody or control regarding any joint defense agreements you have entered into with Triad since 1997.

5.     Any and all documents in your possession, custody or control regarding communications by you or on your behalf, with the Federal Trade Commission (FTC) regarding the obligations of mortgage insurers to provide adverse action notice to consumers under the Fair Credit Reporting Act and any responses received from the FTC, including but not limited to the following: all versions, including drafts, of letters sent or received; the content of any communications with Clarke Brinckerhoff or other FTC staff members; all versions, including drafts, of proposed changes to FTC Commentary addressing FCRA adverse action notices to consumers; requests for information from the FTC regarding FCRA adverse action notices; and dissemination to Triad of any of the above.

6.    Any and all documents in your possession, custody or control addressing the benefits, costs or liabilities associated with a mortgage insurer providing adverse action notice to consumers that was disseminated or communicated in any way to, received from, or created or performed by Triad or its counsel.

7.    Any and all documents regarding any prospect of litigation, potential for litigation or actual litigation faced by you pertaining to the adverse action notice requirements of the FCRA since January 1, 1997.

8.    Any and all documents regarding payment by you of costs and fees incurred by Triad in defending this lawsuit.

# EXHIBIT B

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# United States District Court

### DISTRICT OF COLUMBIA

SALLY BROESSEL,
      Plaintiff

**V.**

TRIAD GUARANTY INS. CORP.
      Defendant.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER:[1] 1:04cv-4-M
U.S. District Court, Western District of
Kentucky, Bowling Green Division

To: Mortgage Insurance Companies of America- c/o Suzanne Hutchinson
    727 15th Street, NW, 12th Floor, Washington, DC  20005

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

x☒x YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. see attached Exhibit A

| PLACE OF DEPOSITION Esquire Deposition Services 1020 19th Street, NW   Washington DC  20036 | DATE AND TIME May 22, 2006 @9:00 AM |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 4/12/06 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER Kathleen Clark Knight  (813) 286-4100
James Hoyer Newcomer & Smiljanich, PA, 4830 W. Kennedy Blvd., Ste. 550, Tampa, FL
                                       33609

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

1 If action is pending in district other than district of issuance, state district under case number.

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

Date

_____
Signature of Server

_____
Address of Server

RULE 45, Federal Rules of Civil Procedure, Part C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)   A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney In breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)   (A) A person commanded to produce and permit Inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)   Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. if objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. if objection has been made, the party Serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who Is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)   (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that

person resides, Is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B) (iii) of this rule, such a person may In order to attend trial be commanded to travel from any such place within the state in which the trial Is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies. or

(vi) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial Information, or

(ii) requires disclosure of an un-retained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena. quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that Cannot be otherwise met without undue hardship and assures that  the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories In the demand.

(2)   when information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT "A"

Each person designated by You to appear on Your behalf shall be deposed as to the matters set forth below:

1.      Any and all information regardingYour relationship with Triad Guaranty Insurance Corp. ("Triad")

2.      Any and all information in your possession, custody or control regarding advice or information You have provided to Triad regarding a mortgage insurer's obligations to provide adverse action notice to consumers pursuant to the Fair Credit Reporting Act since January 1, 1997.

3.      Any and all information in your possession, custody or control regarding seminars, meetings, clinics or conventions you have sponsored, attended or organized, and to which Triad or its counsel were invited and/or attended, at which adverse action under the Fair Credit Reporting Act was discussed since January 1, 1997.

4.      Any and all information in your possession, custody or control regarding any joint defense agreements you have entered into with Triad since 1997.

5.      Any and all information in your possession, custody or control regarding communications by you or on your behalf, with the Federal Trade Commission (FTC) regarding the obligations of mortgage insurers to provide adverse action notice to consumers under the Fair Credit Reporting Act and any responses received from the FTC, including but not limited to the following: all versions, including drafts, of letters sent or received; the content of any communications with Clarke Brinckerhoff or other FTC staff members; all versions, including drafts, of proposed changes to FTC Commentary addressing FCRA adverse action notices to

consumers; requests for information from the FTC regarding FCRA adverse action notices; and dissemination to Triad of any of the above.

      6.     Any and all information in your possession, custody or control addressing the benefits, costs or liabilities associated with a mortgage insurer providing adverse action notice to consumers that was disseminated or communicated in any way to, received from, or created or performed by Triad or its counsel.

      7.     Any and all information regarding any prospect of litigation, potential for litigation or actual litigation faced by you pertaining to the adverse action notice requirements of the FCRA since January 1, 1997.

      8.     Any and all information regarding payment by you of costs and fees incurred by Triad in defending this lawsuit.

      9.     Any and all information regarding the following documents:

         a.     Email regarding house counsel committee call dated 8/5/03 from Margaret Avery to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore and Alvin Dunn

         b.     Memorandum regarding FCRA adverse action requirements dated 7/16/03 from Goodwin Proctor LLP to John C. Taggart and copied to Margaret Avery, Victor Bacigulupi, S. Clark, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall and Joe Ziino

         c.     Email regarding adverse action committee conference call dated 5/21/03 from Heidi Heyrman to Margaret Avery, Victor Bacigulupi, S. Clark, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeannie Green, Kathryn Stover, Jerry Murphy, Simon Atwood, Ruth Lysak, Pam Morrison, Shirley Gaddy, E. Williams, G. Baity, Joseph Ziino and copied to Bill Hall, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, A. Shore, Julia Turner, D. Walker, Howard Yaruss and Anthony Grafals

d.     Email regarding adverse action initiative dated 4/25/03 from John Taggart to Margaret Avery, Victor Bacigulupi, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeannie Green, Bill Hall, Heidi Heyrman, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Howard Yaruss, Joe Ziino and Tony Grafals

e.     Email regarding adverse action notices dated 4/16/03 from John Taggart to Margaret Avery, Victor Bacigulupi, S. Clarke, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeannie Green, Bill Hall, Heidi Heyrman, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Howard Yaruss, Joe Ziino and Tony Grafals

f.     Email regarding adverse action notices dated 4/15/03 from John Taggart to Margaret Avery, Victor Bacigulupi, S. Clark, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeanie Green, Bill Hall, Heidi Heyrman, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Howard Yaruss, Joe Ziino, and Tony Grafals

g.     Email regarding adverse action notices dated 4/15/03 from John Taggart to Margaret Avery, Victor Bacigulupi, S. Clarke, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeannie Green, Bill Hall, Heidi Heyrman, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Howard Yaruss, Joe Ziino and Tony Grafals

h.     Email and attached attorney notes regarding adverse action experts dated 4/26/03 from John Taggart to Margaret Avery, Victor Bacigulupi, S. Clarke, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeannie Green, Bill Hall, Heidi Heyrman, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Howard Yaruss, Joe Ziino and Tony Grafals

i.     Email regarding adverse action committee dated 5/05/03 from John Taggart to Margaret Avery, Victor Bacigulupi, S. Clarke, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeannie Green, Bill Hall, Heidi Heyrman, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Howard Yaruss, Joe Ziino and Tony Grafals

j.     Email and attached memorandum regarding FACTA dated 4/06/04 from Jeremiah Buckley, L. Richard Fisher, Leonard Chanin, Lewis Rose, and Douglas Kantor to John Taggart and copied to Margaret Avery, Victor

Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

k.    Email regarding FACTA dated 12/17/03 from Goodwin Procter to Electronic Financial Counsel @goodwinprocter.com and copied to Margaret Avery, Victor Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

l.    Email and attached memorandum regarding FACTA dated 12/10/03 from Johnathan Jerrison to John Taggart and copied to Jeremiah Buckley, Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D. T. Walker, Earl Wall, and Joe Ziino

m.    Email and attached memorandum regarding FACTA dated 6/10/05 from John Taggart to Margaret Avery, Victo Bacigulupi, Alvin Dunn, Tony Grafals, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Monica Speight, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, Earl Wall, and Joe Ziino

n.    Email regarding FACTA dated 10/06/04 from Jeremiah Buckley to John Taggart and copied to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, Earl Wall, and Joe Ziino

o.    Email regarding FACTA dated 11/17/03 from Jeremiah Buckley to Richard Fisher and copied to Pete Mills, John Taggart, Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Joe Ziino, Mark Goldhaber, and Gary Miller

p.    Email regarding FACTA dated 11/17/03 from Jeremiah Buckely to Richard Fisher and copied to Pete Mills, John Taggart, Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Joe Ziino, Mark Goldhaber, and Gary Miller

q.  Email regarding FACTA dated 11/18/03 from Jeremiah Buckley to John Taggart and Mark Goldhaber and copied to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Jeff Lane, Crystal Martin, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Joe Ziino, and Debbie Johnson

r.  Email regarding FACTA dated 11/24/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

s.  Email and attached memorandum regarding FACTA dated 09/03/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D. T. Walker, Earl Wall and Joe Ziino

t.  Email with handwritten attorney notes regarding house counsel committee call dated 03/03/03 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, and Alvin Dunn

u.  Email regarding adverse action committee dates 05/05/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clarke, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeannie Green, Bill Hall, Heidi Heyrman, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Howard Yaruss, and Joe Ziino

v.  Email regarding FCRA dated 03/27/03 from Bill Hall to Margaret Avery and copied to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Margaret Avery, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn

w.  Email regarding adverse action committee dated 05/05/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clarke, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeannie Green Bill Hall Heidi Heyrman, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Howard Yaruss and Joe Ziino

x.      Email and attachment regarding adverse action notices dated 4/17/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clarke, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeannie Green, Bill Hall, Heidi Heyrman, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Howard Yaruss, and Joe Ziino

y.      Email and attorney notes regarding house counsel committee call dated 10/31/04 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn

z.      Email with attorney notes regarding house counsel committee call dated 10/03/04 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn

aa.     Email with attorney notes regarding FTC/FRB meeting dated 08/03/04 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, Earl Wall, and Joe Ziino

bb.     Email with attorney notes regarding house counsel committee call dated 7/30/04 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn and copied to June Martin, and Simone Nannery

cc.     Email with attorney notes regarding house counsel committee call dated 7/30/04 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn and copied to June Martin, and Simone Nunnery

dd.     Email regarding house counsel committee call dated 4/23/04 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, Earl Wall, and Joe Ziino

ee.    Email with attorney notes regarding house counsel committee call dated 04/01/04 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn

ff.    Email with attorney notes regarding house counsel committee call dated 12/31/03 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn

gg.    Email with attorney notes regarding house counsel committee call dated 11/21/03 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn

hh.    Email with attorney notes regarding house counsel committee call dated 10/03/03 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn

ii.    Email with attorney notes regarding house counsel committee call dated 05/30/03 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, Alvin Dunn, and Heidi Heyrman

jj.    Email with attorney notes regarding house counsel committee call dated 05/05/03 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn

kk.    Email with attorney notes regarding house counsel committee call dated 03/29/03 from Margaret Avery and Julia Turner to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn

ll.    Email regarding FCRA dated 03/28/03 from Bill Hall to Margaret Avery and copied to Jeannie Green, Susannah Friedman, Tim Hunter, John

Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn

mm.    Email regarding FCRA dated 08/05/03 from Margaret Avery to Jeannie Green, Susannah Friedman, Tim Hunter, John Taggart, Dick Gray, Vic Bacigulupi, Tony Shore, Joel Pasternak, Crystal Martin, Julia Turner, Earl Wall, Sue Ironfield, Terry Wright, Bill Hall, Tony Shore, and Alvin Dunn

nn.    Email and attachment regarding draft joint defense agreement dated 4/17/03 from John Taggart and Julia Turner to Margaret Avery, Vic Bacigulupi, S. Clarke, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeannie Green, Bill Hall, Heidi Heyrman, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Howard Yaruss, Joe Ziino, and Tony Grafals

oo.    Email and attachment regarding draft joint defense agreement dated 05/15/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clarke, Susannah Friedman, Rachel Giuliano, Dick Gray, Jeannie Green, Bill Hall, Heidi Heyrman, Tim Hunter, Sue Ironfield, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker Earl Wall, Howard Yaruss, and Joe Ziino

pp.    Email and attachment regarding FACTA dated 11/17/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clark, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino and copied to Mark Goldhaber

qq.    Email regarding FACTA dated 11/17/03 from Jeremiah Buckley to Richard Fisher and copied to Pete Mills, John Taggart, Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

rr.    Email regarding FACTA dated 11/17/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

ss.    Email regarding FACTA dated 12/17/03 from Goodwin Procter to Electronic Financial Services Counsel @goodwinprocter.com and copied to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Joe Ziino,

Eun Kim-O'Donnell, Mark Goldhaber Gary Miller, and Tom Kleisser

tt.　Email regarding FACTA dated 11/13/03 from Jeremiah Buckley to John Taggart and copied to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

uu.　Email regarding FACTA dated 11/04/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

vv.　Email and attachment regarding FACTA dated 11/17/03 from Jeremiah Buckley to Rick Fisher and Pete Mills and copied to John Taggart, Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Joe Ziino, and Mark Goldhaber

ww.　Email regarding FACTA dated 11/04/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S, Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

xx.　Email and attachment regarding FACTA dated 11/04/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S, Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

yy.　Email regarding FACTA dated 11/13/03 from John Taggart to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

zz.　Email regarding FACTA dated 12/01/03 from Goodwin Procter to Electronic Financial Services Counsel @goodwinprocter.com and copied to John Taggart, Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl Wall, Joe Ziino, Gary Miller, Mark Goldhaber, Debbie Johnson, and Eun Kim-O'Donnell

aaa.   Email regarding FACTA dated 10/23/03 from Vic Bacigulupi to Pat
       Reynolds, and John Taggart and copied to Glen Corso, Mark Goldhaber,
       Gary Miller, Margaret Avery, Vic Bacigulupi, S, Clarke, Dick Gray, Bill
       Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel
       Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl
       Wall, and Joe Ziino

bbb.   Email regarding FACTA dated 10/31/03 from Goodwin Procter to
       Electronic Financial Services Counsel @goodwinprocter.com and copied
       to John Taggart, Margaret Avery, Vic Bacigulupi, S. Clarke, Dick Gray,
       Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin, Joel
       Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl
       Wall, and Joe Ziino

ccc.   Email regarding FACTA dated 11/13/03 from John Taggart to Margaret
       Avery, Vic Bacigulupi, S, Clarke, Dick Gray, Bill Hall, Heidi Heyrman,
       Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds,
       Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

ddd.   Email Regarding FACTA dated 11/13/03 from Jeremiah Buckley to John
       Taggart and copied to Margaret Avery, Vic Bacigulupi, S. Clarke, Dick
       Gray, Bill Hall, Heidi Heyrman, Sue Ironfield, Jeff Lane, Crystal Martin,
       Joel Pasternak, Pat Reynolds, Tony Shore, Julia Turner, D.T. Walker, Earl
       Wall, and Joe Ziino

eee.   Email regarding FACTA dated 11/17/03 from John Taggart to Margaret
       Avery, Vic Bacigulupi, S. Clarke, Dick Gray, Bill Hall, Heidi Heyrman,
       Sue Ironfield, Jeff Lane, Crystal Martin, Joel Pasternak, Pat Reynolds,
       Tony Shore, Julia Turner, D.T. Walker, Earl Wall, and Joe Ziino

fff.   Email regarding FCRA dated 3/6/98 from Suzanne Hutchinson to
       Randolph Sailer, Tim Hunter, John Taggart, Joe Ziino, Vic Bacigalupi,
       Phyllis Wilson, Joel Pasternak, Earl Wall, Dick Gray and Mark
       Augenblick

# EXHIBIT C



Pillsbury
Winthrop
Shaw
Pittman LLP

2300 N Street NW            Tel 202.663.8000
Washington, DC 20037-1128    Fax 202.663.8007
                             www.pillsburylaw.com

Alvin Dunn
Phone: 202.663.8355
alvin.dunn@pillsburylaw.com

May 26, 2006

**By Email Attachment and First Class Mail**

Kathleen Clark Knight, Esq.
James Hoyer Newcomer & Smiljanich, PA
4830 W. Kennedy Blvd., Suite 550
Tampa, FL 33609

  Re: **Sally Broessel v. Triad Guaranty Ins. Corp., Case No. 1:04cv-4-M**

Dear Ms. Knight:

   Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party Mortgage Insurance Companies of America ("MICA") hereby objects and responds to the subpoena for documents served by plaintiff in the above-referenced action:

   1. MICA objects to the subpoena to the extent that it calls for the production of any document or portion thereof that is protected from disclosure by reason of the attorney-client privilege, the work product doctrine, the joint defense or common interest doctrine or privilege, the self-evaluation privilege, Rule 26(b)(3) of the Federal Rules of Civil Procedure, or any other applicable privilege, law, or rule. Inadvertent production of any materials subject to any privilege, doctrine, or rule, or otherwise protected or immune from discovery, shall not constitute a waiver of any privilege or of any ground for objecting to discovery of such material, its subject matter, or information contained therein, or MICA's right to object to the use of such material during any later proceeding.

   2. MICA objects to the subpoena to the extent that it requests confidential, proprietary, or highly sensitive business information or to the extent that it permits information produced in response to the subpoena to be used in any action or proceeding other than the above-referenced action. Such documents will be produced, if at all, only subject to an appropriate protective order agreed to by the parties and entered by the Court that preserves the confidentiality of such information.

400386054v1

Kathleen Clark Knight, Esq.
May 26, 2006
Page 2


3.    MICA objects to the subpoena to the extent that it seeks the production of documents provided to MICA by other entities under an agreement or understanding that MICA would maintain the confidentiality of the documents; MICA will not produce any documents that would require MICA to violate its confidentiality obligations.

4.    MICA objects to the subpoena to the extent that it seeks documents not in the possession, custody, or control of MICA.

5.    MICA objects to the subpoena to the extent it is overly broad or seeks the production of documents that are not relevant to the subject of the above-referenced action or are not reasonably calculated to lead to the discovery of admissible evidence.

6.    MICA objects to the subpoena to the extent that it contains terms or requests that are vague or ambiguous.

7.    MICA objects to the subpoena to the extent that it seeks documents already produced in this action or documents that are more readily available from sources other than MICA, in particular any party to this action.

8.    MICA objects to the subpoena to the extent that it seeks to impose obligations inconsistent with or greater than those imposed by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Western District of Kentucky.

9.    MICA objects to the subpoena to the extent that compliance with the subpoena would impose an undue burden and expense upon MICA, which is not a party to the above-referenced action.

10.    MICA objects to producing documents in Tampa, Florida, on April 21, 2006, at 9:00 a.m.  To the extent that MICA produces responsive documents, it will do so at a place and time that is convenient for MICA, the parties, and their counsel.

11.    MICA objects to the subpoena to the extent that it purports to call for MICA to search electronic backup tapes for potentially relevant documents.  Such a search would be unduly burdensome and would not likely lead to the discovery of relevant documents.  To the extent that MICA produces responsive documents, it will produce documents that it discovers following a reasonable search by its employees of

400386054v1

Kathleen Clark Knight, Esq.
May 26, 2006
Page 3

MICA's hard-copy documents and of electronically stored documents reasonably available on individual MICA computers.

12.     MICA objects to the subpoena to the extent that it purports to require MICA to change its normal business practice of recycling used electronic backup tapes. Per agreement with counsel, MICA has not changed its normal business practice of recycling used electronic backup tapes.

13.     MICA objects to the subpoena to the extent that it purports to require MICA to produce original documents. MICA will produce photocopies of nonprivileged documents, if any, that it discovers that are responsive to the subpoena.

14.     MICA objects to the subpoena to the extent that it seeks to impose on MICA any obligation to conduct additional searches for documents that MICA may come to possess after MICA conducts its search for documents responsive to the subpoena.

15.     MICA objects to the subpoena to the extent that it calls for MICA to produce documents created or received prior to January 7, 2002, or documents created or received after April 13, 2006, which is the date that MICA's counsel agreed to accept service of the subpoena on behalf of MICA. This objection applies in particular to Request Nos. 2, 3, 4, 5, 6, and 7 to the extent those requests seek documents created or received prior to January 7, 2002.

16.     An objection to a request does not indicate in any way that documents responsive to that request exist or have ever existed.

MICA incorporates each of the above objections by reference into each specific response set forth below. Subject to those general objections, MICA further objects and responds to the requests set forth in the subpoena as follows:

**Request No. 1:**  Any and all documents regarding Your relationship with Triad Guaranty Insurance Corp. ("Triad").

**MICA Response to Request No. 1:**
MICA objects to this request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and seeks documents that are not relevant to the subject of the above-referenced action or are not reasonably calculated to lead to the discovery of admissible evidence. MICA further objects to this

Pillsbury Winthrop Shaw Pittman LLP

Kathleen Clark Knight, Esq.
May 26, 2006
Page 4

request to the extent that the documents requested are protected
from discovery by the attorney-client privilege and the work
product, joint defense, and/or common interest doctrines and to the
extent that the documents requested are available from Triad,
which is a party to this action.

**Request No. 2:** Any and all documents in your possession, custody or control
regarding advice or information You have provided to Triad regarding a mortgage
insurer's obligations to provide adverse action notice to consumers pursuant to the Fair
Credit Reporting Act since January 1, 1997.

**MICA Response to Request No. 2:**
MICA objects to this request on the ground that the documents
requested are protected from discovery by the work product, joint
defense, and/or common interest doctrines and to the extent that
the documents requested are available from Triad, which is a party
to this action.

**Request No. 3:** Any and all documents in your possession, custody or control
regarding seminars, meetings, clinics or conventions you have sponsored, attended or
organized, and to which Triad or its counsel were invited and/or attended, at which
adverse action under the Fair Credit Reporting Act was discussed since January 1, 1997.

**MICA Response to Request No. 3:**
MICA objects to this request on the ground that the documents
requested are protected from discovery by the work product, joint
defense, and/or common interest doctrines and to the extent that
the documents requested are available from Triad, which is a party
to this action.

**Request No. 4:** Any and all documents in your possession, custody or control
regarding any joint defense agreements you have entered into with Triad since 1997.

**MICA Response to Request No. 4:**
MICA objects to this request on the ground that the documents
requested are protected from discovery by the work product, joint
defense, and/or common interest doctrines and to the extent that

Pillsbury Winthrop Shaw Pittman LLP

Kathleen Clark Knight, Esq.
May 26, 2006
Page 5


the documents requested are available from Triad, which is a party
to this action.

**Request No. 5:**  Any and all documents in your possession, custody or control
regarding communications by you or on your behalf, with the Federal Trade Commission
(FTC) regarding the obligations of mortgage insurers to provide adverse action notice to
consumers under the Fair Credit Reporting Act and any responses received from the FTC,
including but not limited to the following:  all versions, including drafts, of letters sent or
received; the content of any communications with Clarke Brinkerhoff or other FTC staff
members; all versions, including drafts, of proposed changes to FTC Commentary
addressing FCRA adverse action notices to consumers; requests for information from the
FTC regarding FCRA adverse action notices; and dissemination to Triad of any of the
above.

**MICA Response to Request No. 5:**
MICA objects to this request to the extent that the documents
requested are protected from discovery by the work product, joint
defense, and/or common interest doctrines and to the extent that
the documents requested are available from Triad, which is a party
to this action.

**Request No. 6:**  Any and all documents in your possession, custody or control
addressing the benefits, costs or liabilities associated with a mortgage insurer providing
adverse action notice to consumers that was disseminated or communicated in any way
to, received from, or created or performed by Triad or its counsel.

**MICA Response to Request No. 6:**
MICA objects to this request on the ground that the documents
requested are protected from discovery by the work product, joint
defense, and/or common interest doctrines and to the extent that
the documents requested are available from Triad, which is a party
to this action.

**Request No. 7:**  Any and all documents regarding any prospect of litigation,
potential for litigation or actual litigation faced by you pertaining to the adverse action
notice requirements of the FCRA since January 1, 1997.

Kathleen Clark Knight, Esq.
May 26, 2006
Page 6

**MICA Response to Request No. 7:**
MICA objects to this request on the ground that the documents
requested are protected from discovery by the attorney-client
privilege and the work product, joint defense, and/or common
interest doctrines.  MICA responds further that it has conducted a
reasonable search for the documents requested and has not
discovered any documents responsive to the request.

**Request No. 8:**  Any and all documents regarding payment by you of costs and
fees incurred by Triad in defending this lawsuit.

**MICA Response to Request No. 8:**
MICA objects to this request on the ground that the documents
requested are protected from discovery by the work product, joint
defense, and/or common interest doctrines.  MICA responds
further that it has conducted a reasonable search for the documents
requested and has not discovered any documents responsive to the
request.

MICA reserves the right to amend, expand, or delete any or any part of these
objections and responses.

Sincerely,

Alvin Dunn

Pillsbury Winthrop Shaw Pittman LLP

# EXHIBIT D



**Pillsbury
Winthrop
Shaw
Pittman** LLP

2300 N Street  NW            Tel 202.663.8000
Washington, DC  20037-1128   Fax 202.663.8007
                             www.pillsburylaw.com

Alvin Dunn
Phone: 202.663.8355
alvin.dunn@pillsburylaw.com

May 26, 2006

**By Email Attachment and First Class Mail**

Kathleen Clark Knight, Esq.
James Hoyer Newcomer & Smiljanich, PA
4830 W. Kennedy Blvd., Suite 550
Tampa, FL 33609

   **Re: Sally Broessel v. Triad Guaranty Ins. Corp., Case No. 1:04cv-4-M**

Dear Ms. Knight:

   Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, non-party
Mortgage Insurance Companies of America ("MICA") hereby objects and responds to
the deposition subpoena served by plaintiff in the above-referenced action:

   1.  MICA objects to the subpoena to the extent that it calls for testimony that
is protected from disclosure by reason of the attorney-client privilege, the work product
doctrine, the joint defense or common interest doctrine or privilege, the self-evaluation
privilege, Rule 26(b)(3) of the Federal Rules of Civil Procedure, or any other applicable
privilege, law, or rule.

   2.  MICA objects to the subpoena to the extent that it requests confidential,
proprietary, or highly sensitive business information or to the extent that it permits
information provided in response to the subpoena to be used in any action or proceeding
other than the above-referenced action.  Such information will be provided, if at all, only
subject to an appropriate protective order agreed to by the parties and entered by the
Court that preserves the confidentiality of such information.

   3.  MICA objects to the subpoena to the extent that it seeks information
provided to MICA by other entities under an agreement or understanding that MICA
would maintain the confidentiality of the information; MICA will not produce any
information that would require MICA to violate its confidentiality obligations.

400399764v1

Kathleen Clark Knight, Esq.
May 26, 2006
Page 2

4.      MICA objects to the subpoena to the extent it is overly broad or seeks information that is not relevant to the subject of the above-referenced action or is not reasonably calculated to lead to the discovery of admissible evidence.

5.      MICA objects to the subpoena to the extent that it contains terms or requests that are vague or ambiguous.

6.      MICA objects to the subpoena to the extent that it seeks to impose obligations inconsistent with or greater than those imposed by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Western District of Kentucky.

7.      MICA objects to appearing to testify on May 22, 2006, at 9 a.m., at Esquire Deposition Services. To the extent that MICA appears to testify, it will do so at a place and time that is convenient for MICA, the parties, and their counsel.

8.      MICA objects to the subpoena to the extent that it calls for MICA to provide information regarding events prior to January 7, 2002, or after April 13, 2006, which is the date that MICA's counsel agreed to accept service of the subpoena on behalf of MICA.

9.      MICA incorporates each of the above objections by reference into each specific response set forth below. Subject to those general objections, MICA further objects and responds to the requests set forth in the subpoena as follows:

**Request No. 1:**  Any and all information regarding Your relationship with Triad Guaranty Insurance Corp. ("Triad").

**MICA Response to Request No. 1:**
MICA objects to this request on the grounds that it is vague and ambiguous, overly broad, unduly burdensome, and seeks information that is not relevant to the subject of the above-referenced action or is not reasonably calculated to lead to the discovery of admissible evidence. MICA further objects to this request to the extent that the information requested is protected from discovery by the attorney-client privilege and the work product, joint defense, and/or common interest doctrines.

Pillsbury Winthrop Shaw Pittman LLP

Kathleen Clark Knight, Esq.
May 26, 2006
Page 3

**Request No. 2:**  Any and all information in your possession, custody or control regarding advice or information You have provided to Triad regarding a mortgage insurer's obligations to provide adverse action notice to consumers pursuant to the Fair Credit Reporting Act since January 1, 1997.

**MICA Response to Request No. 2:**
MICA objects to this request on the ground that the information requested is protected from discovery by the work product, joint defense, and/or common interest doctrines.

**Request No. 3:**  Any and all information in your possession, custody or control regarding seminars, meetings, clinics or conventions you have sponsored, attended or organized, and to which Triad or its counsel were invited and/or attended, at which adverse action under the Fair Credit Reporting Act was discussed since January 1, 1997.

**MICA Response to Request No. 3:**
MICA objects to this request on the ground that the information requested is protected from discovery by the work product, joint defense, and/or common interest doctrines.

**Request No. 4:**  Any and all information in your possession, custody or control regarding any joint defense agreements you have entered into with Triad since 1997.

**MICA Response to Request No. 4:**
MICA objects to this request on the ground that the information requested is protected from discovery by the work product, joint defense, and/or common interest doctrines.

**Request No. 5:**  Any and all information in your possession, custody or control regarding communications by you or on your behalf, with the Federal Trade Commission (FTC) regarding the obligations of mortgage insurers to provide adverse action notice to consumers under the Fair Credit Reporting Act and any responses received from the FTC, including but not limited to the following:  all versions, including drafts, of letters sent or received; the content of any communications with Clarke Brinkerhoff or other FTC staff members; all versions, including drafts, of proposed changes to FTC Commentary addressing FCRA adverse action notices to consumers; requests for information from the FTC regarding FCRA adverse action notices; and dissemination to Triad of any of the above.

400399764v1

Kathleen Clark Knight, Esq.
May 26, 2006
Page 4

**MICA Response to Request No. 5:**
MICA objects to this request to the extent that the information
requested is protected from discovery by the work product, joint
defense, and/or common interest doctrines.

**Request No. 6:**  Any and all information in your possession, custody or control
addressing the benefits, costs or liabilities associated with a mortgage insurer providing
adverse action notice to consumers that was disseminated or communicated in any way
to, received from, or created or performed by Triad or its counsel.

**MICA Response to Request No. 6:**
MICA objects to this request on the ground that the information
requested is protected from discovery by the work product, joint
defense, and/or common interest doctrines.

**Request No. 7:**  Any and all information regarding any prospect of litigation,
potential for litigation or actual litigation faced by you pertaining to the adverse action
notice requirements of the FCRA since January 1, 1997.

**MICA Response to Request No. 7:**
MICA objects to this request on the ground that the information
requested is protected from discovery by the attorney-client
privilege and the work product, joint defense, and/or common
interest doctrines.

**Request No. 8:**  Any and all information regarding payment by you of costs and
fees incurred by Triad in defending this lawsuit.

**MICA Response to Request No. 8:**
MICA objects to this request on the ground that the information
requested is protected from discovery by the work product, joint
defense, and/or common interest doctrines.

**Request No. 9:**  Any and all information regarding the following documents:
[Document descriptions omitted.]

**MICA Response to Request No. 9:**
MICA objects to this request on the ground that the information

Pillsbury Winthrop Shaw Pittman LLP

Kathleen Clark Knight, Esq.
May 26, 2006
Page 5


      requested is protected from discovery by the work product, joint
defense, and/or common interest doctrines.

      MICA reserves the right to amend, expand, or delete any or any part of these
objections and responses.

                      Sincerely,

                      Alvin Dunn

# EXHIBIT E

UNITED STATES DISTRICT COURT
WESTERN DISTRICT KENTUCKY
BOWLING GREEN DIVISION

SALLY BROESSEL,
On Behalf of Herself And All                           CASE NO. 1:04-CV-4-M
Others Similarly Situated,
                                                       CLASS REPRESENTATION

                        Plaintiffs,

vs.

TRIAD GUARANTY INSURANCE CORP.,

                        Defendant.

_____/

## PLAINTIFF'S RENEWED MOTION TO COMPEL
## BASED ON NEW ASSERTION OF ADVICE OF COUNSEL DEFENSE BY TRIAD
## AND INCORPORATED MEMORANDUM OF LAW

### I. INTRODUCTION

During its corporate deposition on October 19, 2006, Triad for the first time revealed its real

intent to rely on the advice of counsel in defense of the above-captioned lawsuit. This revelation

came after almost three years of litigation, throughout which Triad has maintained that it did not

intend to rely on the advice of counsel, and after the Court's *in camera* review of almost 1,700 pages

of documents which Triad withheld based on privilege. Plaintiff is now entitled to the discovery she

has sought all along; discovery successfully rebuffed by Triad's assertion of privilege based on its

evidently disingenuous claim that it would not rely on the advice of counsel in defense of Plaintiff's

claim that Triad willfully violated the Fair Credit Reporting Act. Plaintiff must also be provided with

an adequate opportunity to complete discovery on the newly raised advice of counsel defense.[1]  In

the interests of justice, Defendant must not be permitted to raise the sword of advice of counsel and

hide anything on the subject of the advice behind the shield of privilege.

**Procedural History**

Plaintiff filed her Complaint on January 7, 2004.  (Docket Entry 2).  Triad filed its Defenses

and Answer to the Complaint on March 11, 2004, in which it asserted 14 defenses.  (Docket Entry

23).  Reliance on advice of counsel was not among the 14 defenses asserted in Triad's answer.  On

December 7, 2005, in response to an interrogatory from Plaintiff, Defendant specifically stated that

"it does not presently intend to rely on the advice of counsel as a defense in this Action."[2]  Triad

further stated that it would supplement its response as necessary.  Although Triad has supplemented

its discovery responses several times throughout this litigation as required by Fed. R. Civ. P. 26(e),

Triad never supplemented its response to the interrogatory regarding its intent to rely on the advice

of counsel.

On March 21, 2006, Triad produced a revised privilege log.  The privilege log listed 1,689

pages of documents withheld from production by Triad based on claim of privilege.  Plaintiff believed

that many of the documents were not privileged or that Triad had waived the privilege through third

---

[1] The fact discovery cut-off of December 1, 2006 was proposed by Plaintiff and accepted
by this Court at a time when Triad still maintained the position that it would not rely on the advice
of counsel in defense of Plaintiff's case.  Triad's new position may necessitate the extension of the
discovery and other scheduling deadlines so that Plaintiff can obtain a ruling on this motion, and
complete discovery on the advice of counsel defense, including the third party deposition of
MICA and another Rule 30(b)(6) deposition of Triad after all documents withheld as privileged
are produced.

[2] See Defendant's Response to Plaintiff's Third Set of Interrogatories No. 13 (Ex. A).

2

party disclosure and filed a motion to compel. (Docket Entry 103). The crux of Plaintiff's argument was that Triad did not have a valid joint defense or common interest with various third parties and that therefore the privilege had been waived. (Docket Entry 103). After an *in camera* review of voluminous documents, this Court found that many of the documents were privileged and were not required to be produced. (Docket Entry 143). Had Triad disclosed its intent to rely on advice of counsel, this would have obviated the need for the Court to examine the validity of Triad's asserted joint defense or common interest privilege, since reliance on advice of counsel directly places attorney-client communications and matters otherwise subject to a joint defense privilege at issue and results in waiver.

On October 16, 2006, Triad served its responses and objections to Plaintiffs' Notice and Amended Notice of Deposition of Defendant pursuant to Fed. R. Civ. P. 30(b)(6). (Ex. B). In response to Designated Matter No. 14, in which Plaintiff requested Triad to produce a witness to address "any communications within Triad regarding the legal necessity, *vel non*, of providing adverse action notices," Triad objected and refused to produce a witness to testify on this topic, arguing that such communications are privileged. Additionally, in response to Designated Matter No. 16, in which Plaintiffs requested production of a witness to address "whether Triad intends to rely on the advice or opinions of its counsel in its defense to this lawsuit," Triad objected and refused, stating that, **"Triad has stated that it does not intend to rely on the advice of counsel as a defense in this Action and has amended its Answer to withdraw the defense of advice of counsel."** (Ex. B) (emphasis added).[3]

---

[3] Defendant did not raise the defense of advice of counsel in its Answer and therefore did not amend its Answer to withdraw that defense. Defendant did raise the defense that it

accordance with the requirements of the Fair Credit Reporting Act. (Docket Entry 70). Having now made this <u>late</u> assertion (less than two months before the close of discovery) that Triad will rely on the advice of attorney Wall – Triad cannot be permitted to hide behind its prior successful assertions of privilege any longer.

Stated another way, by making the decision to rely on the advice of counsel, Triad has put its counsel's advice directly at issue and is now required to disclose information and documents relating to the advice it received.[4] Plaintiff is not required to accept at face value Triad's statement that its counsel advised Triad that it did not have to provide adverse action notice. Plaintiff is entitled to discover whether Triad was actually advised that it did not have to provide notice and, if so, the strength of and basis for counsel's opinion that notice was not required. Moreover, although Triad has stated that it did not rely on advice of outside counsel, Plaintiff is entitled to discover advice provided by outside counsel because this advice may have been contrary to the advice provided by Triad's in-house counsel. Triad's decision to rely only on certain advice in the face of contrary advice is relevant to Triad's knowledge and state of mind, as well as to the reasonableness of its decision to follow the advice it claims to have relied upon.

## II. ARGUMENTS

## A.   THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT PRIVILEGE ARE WAIVED WHEN THE "RELIANCE ON ADVICE OF COUNSEL" DEFENSE IS RAISED

---

[4] This Court may find that Triad is barred from asserting a defense of reliance on advice of counsel at this stage in the litigation because Triad did not plead reliance of counsel as an affirmative defense in its Answer. *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 700 (6th Cir. 1996).

5

The defense of reliance on advice of counsel consists of two elements, "(1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice." *Thrower v. U.S.*, Case No. 1:03CR341, 2005 WL 1460128, at *2 (N.D. Oh. June 17, 2005) (citing *United States v. Lindo,* 18 F.3d 353, 356 (6th Cir.1994)).  By asserting reliance on advice of counsel, Triad is affirmatively using privileged communications in its defense and has put the advice it received from attorneys in issue, resulting in waiver of Defendant's attorney-client privilege. *Beery v. Thomson Consumer Elec., Inc.*, 218 F.R.D. 599, 604 (S.D. OH 2003) (citing *United States v. Ohio Edison Co.*, Case No. C2-99-1181, 2002 WL 1585597, at *5 (S.D. Oh. July 11, 2002); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3rd Cir.1994)).  A party does not have to formally assert the advice of counsel defense in order to waive the attorney-client privilege.  A party waives the privilege if it makes an assertion that in fairness requires an examination of protected communications.  *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *In re Broadcom Corp. Sec. Litig.*, No. SA CV 01275GLTMLGX, at *1 (C.D. Ca. Feb. 10, 2005); *Am. Steamship Owners Mutual Protection and Indemnity Assoc., Inc. v. Alcoa Steamship Co., Inc.*, No. 04CIV.4309, 2005 WL 2234029, at *8 (S.D. N.Y. Sept. 13, 2005); *In re Snell*, 232 B.R. 684, 685 (Bankr. S.D. Oh. March 8, 1999). "[C]ourts have found the injection of advice of counsel to waive the attorney-client privilege as to communications and documents relating to the advice." *Chevron Corp. v. Genentech, Inc.*, 179 F.Supp.2d 1182, 1186 (9th Cir. 2001).

When a party asserts the reliance on advice of counsel defense, it waives the attorney-client privilege with regard to any attorney-client communications regarding the same subject matter. *In re Grand Jury Proceedings*, 78 F.3d 251, 255 (6th Cir. 1996); *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005).  Triad "should not be permitted to define selectively the

subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3rd Cir. 1995). This is because "litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case . . .the attorney-client privilege cannot at once be used as a shield and a sword." *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). There is an inherent risk in permitting the [defendant] to define the parameters of the waiver of the attorney-client privilege as to that advice" and "[t]o do so would undermine the very purpose behind the exception to the attorney-client privilege at issue here-fairness." *Glenmede Trust Co.*, 56 F.3d 476. By relying on the advice of its counsel regarding its obligation to provide adverse action notice under the FCRA, Triad must produce all information and documents relating to the advice it received. This includes all of the documents relating to advice of counsel which were previously withheld based on the attorney-client privilege, joint defense/common interest privilege,[5] and work product protection.

In *Glenmede*, the court held that the defendant waived the attorney-client privilege as to all communications to or from counsel as to the entire subject matter of the case. *Id.* at 487. As *Glenmede* illustrates, the breadth of information to which Plaintiffs are entitled based on the reliance on advice of counsel defense is justified because Plaintiffs "must be able to test what information had

---

[5] The joint defense/common interest privilege is an extension of the attorney-client privilege. *E.g.*, *Royal Surplus Lines Ins. v. Sofamor Danek Group*, 190 F.R.D. 463, 472 (W.D. Tenn. 1999). It is an exception to the general rule that disclosure of a privileged communication to a third party waives the attorney-client privilege. The joint defense/common interest privilege allows a party to disclose privileged communications to persons with whom it shares a joint defense or common interest without waiving the attorney-client privilege. Since the joint defense/common interest privilege arises from the attorney-client privilege, waiver of the attorney-client privilege also destroys the joint defense privilege.

been conveyed by the client to counsel and vice-versa regarding that advice-whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client." *Id.* at 486.

In addition, Plaintiff is entitled to receive all "documents that embody a communication between the attorney and client concerning the subject matter of the case" and "documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client." *In re Echostar*, 448 F.3d 1294, 1302 (Fed. Cir. 2006). The broad scope to which waiver applies is to "prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice. *Id.* at 1303.

In addition to waiver of the attorney-client privilege, Defendant's reliance on the advice of its counsel waives the work product privilege. As the Sixth Circuit Court of Appeal has held:

> Counsel for [Defendant] elected to interject [its attorneys] into these proceedings and thereby waived the attorney-client privilege. In so doing, the work product privilege was waived as well. *See In re Columbia/HCA Corp.,* 293 F.3d 289, 306 (6th Cir.2002) ("there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege"). Even if we were to find that the documents at issue were prepared in anticipation of litigation, therefore, they would still be subject to production.

*In re Powerhouse Licensing, LLC*, 441 F.3d 467, 474 (6th Cir. 2006). "The standard for waiving the work-product doctrine should be no more stringent than the standard for waiving the attorney-client privilege - once the privilege is waived, waiver is complete and final . . ." *In re Columbia/HCA Corp.*, 293 F.3d 289, 306 (6th Cir. 2002).

_____In addition to its previously withheld documents, given its assertion of the reliance on counsel defense, Defendant has improperly withheld deposition testimony regarding the basis for its decision not to provide adverse action notice. During Triad's deposition on October 19, 2006, Triad's counsel instructed Triad's corporate representatives not to answer many questions about the basis for its decision not to provide adverse action notice based on claim of privilege. For example, Triad's counsel would not allow Mr. Wall to answer what about the statute made him believe it was not applicable to mortgage insurance. Wall Depo. 8:13-23 (Ex. C). Triad's counsel would not allow Mr. Wall to testify regarding discussions of the joint defense group, including whether the joint defense group made Triad aware of rulings from courts on the issue of adverse action. Wall Depo. 14:15-16:12; 16:15-21 (Ex. C). Mr. Wall was instructed not to answer whether the Ninth Circuit *Reynolds* decision played a role in Triad's decision to change its adverse action notice procedures. Wall Depo. 17:11-17 (Ex. C). Mr. Wall provided the company's conclusion that "[o]ur research indicates that a correct interpretation of the statute and public policy underlying the statute leads to the conclusion that Section 615 of FCRA does not apply to mortgage insurance companies," but would not testify as to the basis for reaching that conclusion based on a claim of privilege. Wall Depo. 22:3-7 (Ex. C). Mr. Wall would not testify whether he made recommendations to Triad based on the conclusions reached in an FTC Staff Opinion Letter. Wall Depo. 31:12-18 (Ex. C). Mr. Wall refused to testify as to the manner in which Triad reached the decision not to provide adverse action notice. Wall Depo. 57:1-17 (Ex. C). Mr. Wall refused to discuss any communications within Triad regarding the legal necessity of providing adverse action notice. Wall Depo. 59:5-23 (Ex. C).

_____A number of factual and legal questions must be answered in order to test the truthfulness and reasonableness of Defendant's reliance. For example: 1) Did Defendant actually receive pertinent

9

advice of counsel?; 2) What is the level of Defendant's sophistication?; 3) What led Defendant to seek the advice?; 4) When did Defendant secure the advice?; 5) What input did Defendant receive about the quality and content of the legal advice?; 6) What was the source of the advice (i.e, in-house or outside counsel)?; 7) What did Defendant know about the information that flowed to the lawyer rendering the opinion?; 8) What did Defendant know about how the questions were posed to the lawyer and how the lawyer framed his inquiries and shaped his task?; 9) What did Defendant know about how thorough the lawyer's investigation was and about the degree of care the lawyer took in identifying the pertinent legal principles?; 10) What can Defendant say about the accuracy and comprehensiveness of the data and facts to which the lawyer applied the legal principles?; 11) How tight, linear, and persuasive does the lawyer's reasoning appear?; 12) Does the lawyer's  analysis reflect sufficient nuance?; 13) Does the lawyer's opinion acknowledge and assess competing views or lines of reasoning?; 14) Does the lawyer's opinion advert to reported opinions or outcomes in other litigation and does it adequately take into account the implications of other proceedings? *Sharper Image Corp. v. Honeywell Int'l Inc.*, 22 F.R.D. 621, 632-34 (N.D. Cal. 2004).    Whether counsel's opinion evidences an adequate foundation based on a review of all necessary facts, whether it is thorough, its overall tone, its discussion of caselaw and its analysis of the facts are all relevant to whether reliance on the opinion was reasonable. *Steelcase Inc. v. Haworth, Inc.*, 954 F. Supp. 1195, 1198 (W.D. Mich. 1997). Thus, all attorney-client communications concerning the subject matter, all documents referring to counsel's opinions, and all documents bearing on Triad's state of mind are discoverable. *Id.* at 1199. Plaintiff "is entitled to discover facts relating to when the defendant sought the advice, what defendant knew about defense counsel's independence, skill, and competence to provide the opinion, what defendant knew about the nature and extent of analysis

10

performed by defense counsel, and what defendant knew or had concluded about the credibility, value, and reasonableness of the opinion." *Michlin v. Canon, Inc.*, 208 F.R.D. 172 (E.D. Mich. 2002). Plaintiff is entitled to assess the truthfulness and reasonableness of Defendant's purported reliance through discovery of all information and documents relating to advice from counsel about the obligation to provide adverse action notice.

**B.     DEFENDANT CANNOT LIMIT ITS DEFENSE OF "RELIANCE ON ADVICE OF COUNSEL" TO ADVICE RECEIVED FROM IN-HOUSE COUNSEL**

_____Triad has stated that it intends to raise the defense of reliance on advice of counsel with respect to its in-house counsel, but not with respect to any other counsel. Although Triad may have decided to follow the advice of its in-house counsel, Plaintiff is entitled to learn all of the advice that Triad received, not just the advice it decided to follow. A party "may not selectively disclose privileged communications that it considers helpful while claiming privilege on damaging communications relating to the same subject." *Chevron*, 179 F.Supp.2d at 1186. Thus, "a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Computer Associates Int'l. v. Simple.com, Inc.*, No. 02 Civ. 2748, 2006 WL 3050883, at \*2 (E.D. N.Y. Oct. 23, 2006)). "[P]arties should not be able to manipulate the privilege so as to release only favorable information and withhold anything else." *Kelsey-Hayes Co.*, 155 F.R.D. 170, 171 (W.D. Mich. 1991).

It is particularly important that Plaintiff discover information and documents relating to all advice that Triad received because the advice which it claims to have relied on is the advice of its in-house counsel. In *Underwater Devices Inc. v. Morrison-Knudsen Co. Inc.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983), the court discussed the importance of defendant's ability to demonstrate that, "when

11

it sought advice, it did so in good faith." The court held that because the defendant "knew that the attorney from whom it sought advice was its own in-house counsel," this was "a fact to be weighed" in determining whether defendant "knew or should have known that it proceeded without the type of competent legal advice upon which it could justifiably have relied." *Id.* (citing *Western Elec. Co. v. Stewart-Warner Corp.,* 631 F.2d 333, 337 (4th Cir. 1980), *cert. denied,* 450 U.S. 971 (1981)). "When a defendant asserts the advice-of-counsel defense, the attorney-client privilege is waived as to communications with all counsel related to the same subject matter." *Affinion Net Patents, Inc.*, 440 F.Supp.2d 354, 356 (D. Del. 2006).

One of the two elements of the "reliance on advice of counsel" defense is "the good faith reliance on counsel's advice." *United States v. Lindo,* 18 F.3d 353, 356 (6th Cir.1994). The *Underwater Devices Inc.* case illustrates the dilemma faced when one party asserts reliance on advice of counsel, yet refuses to provide information necessary for the opposing party to determine whether such reliance was in good faith. Information regarding advice Triad received from outside counsel is relevant to whether Triad's reliance on the advice of in-house counsel was in good faith. For example, any communication to Triad from outside counsel advising Triad that its practices may be in violation of the FCRA is relevant to whether Triad's reliance on the advice of its counsel was reasonable, whether Triad had reason to believe that its in-house counsel's advice was incorrect or misguided, and the extent of Triad's knowledge regarding the legal requirements of the FCRA.

Because Triad has now squarely placed the advice of its counsel at issue in the case, Plaintiff is entitled to discover the full universe of advice that Triad received as to its obligation to provide adverse action notice, not just the advice of its in-house counsel. *Echostar*, 448 F.3d at 1299 (stating that reliance on advice of counsel "waived the attorney-client privilege with regard to any attorney-

12

client communications relating to the same subject matter, including communications with other than in-house counsel . . .").  ____

### III.  CONCLUSION

Throughout this litigation, Triad has maintained that it did not intend to rely on the advice of counsel as a defense to this lawsuit.  Now, at this late stage in the litigation, Triad asks Plaintiff and this Court to blindly accept that its counsel advised it that it was not required to provide adverse action notice – offered in defense of Plaintiff's claim of Triad's willful violation of FCRA – while at the same time refusing to produce the documents and information or provide the testimony that will either support or refute its contention, including documents and information regarding contrary advice that Triad may have received and documents regarding Triad's independent knowledge of its FCRA obligations.  For the foregoing reasons, Plaintiff respectfully requests that this Court grant her motion to compel and require Triad to produce documents and provide testimony regarding the advice it received about its obligation to provide adverse action notices, which it has successfully withheld based on a claim of privilege.  Plaintiff also by this motion seek an extension of time as may be necessary to complete discovery on Triad's newly asserted defense of no less than 60 days following the Court's issuance of its decision on Plaintiff's Motion.

13

JAMES, HOYER, NEWCOMER &
    SMILJANICH, P.A.

*s/Terry A. Smiljanich*
Terry A. Smiljanich
W. Christian Hoyer
Tamra Carsten Givens
4830 W. Kennedy Blvd., Suite 550
Tampa, FL 33609
Telephone: (813) 286-4100

PARRY DEERING FUTCHER
  &SPARKS, PSC
Dana E. Deering
128 East Second Street
P.O. Box 2618
Covington, KY 41012
Telephone: (859) 291-9000

DOUGLAS BOWDOIN, PA
Douglas Bowdoin
Suite 800, Citrus Center
255 S. Orange Avenue
Orlando, FL 32801
Telephone: (407) 422-0025

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I HEREBY certify that the foregoing was filed by using the CM/ECF filing system this 1st day of November, 2006 and the Clerk will send electronic filing notice to the following attorneys of record:

Nolan C. Leake
Jennifer R. Vala
Lisa Wolgast
King & Spalding
1180 Peachtree St. NE
Atlanta, GA 30309-3521

Ronald G. Sheffer
Sheffer Law Firm, LLC
101 South Fifth Street, Suite 1600
Louisville, KY 40202

*s/Terry A. Smiljanich*

14